IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02302–PAB–KMT


JOHN M MEYER, JR.,

     Plaintiff,

v.

MR. SINGH (individual and official capacity) DRDC Medical Doctor,
MR. FERGUSON (individual his official capacity) Sgt. DRDC Infirmary,
McMILLAN (individual and official capacity) Sgt. CTCF CH3,
MS. SHOEMAKER (individual and official capacity) Director Medical CTCF,
MR. MEIGGS (individual and official capacity) Intack Sgt. CTCF,
K. MITCHELL (individual and official capacity) Physicians Assistant (PA),
MR. HIEDENTHAUL (individual and official capacity) Acting Lt, CH3,
BETTY STOCKMAN (individual and official capacity) Acting Reg. Nurse,
JOHN DOE 1 (individual and official capacity) Correctional Officer CH4,
JOHN DOE 2 (individual and official capacity) C/O CTCF Reception,
CORRECTIONAL HEALTH PARTNERS (individual and official capacity) Provider,
MS. BAELIN (individual and official capacity) Acting Nurse DRDC,
MS. GOODWIN (individual and official capacity) Acting Nurse DRDC,
DR. DARROW (individual and official capacity) Medical Doctor CTCF, and
MS. HOEKSTRA (individual and official capacity) Physician Assistant,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

     In this prisoner civil rights suit, Plaintiff brings claims for excessive force and deliberate

indifference to a serious medical need in violation of the Eighth Amendment.  The case comes

before the court on Motions to Dismiss by Defendant Correctional Health Partners (CHP) and by

Defendants Singh, Ferguson, McMillan, Shoemaker, Meiggs, Mitchell, Hiedenthaul, Stockman,

Goodwin, and Hoekstra (Individual Defendants) and on "Order to Show Cause for a Preliminary

Injunction" and a Motion to Amend by Plaintiff.  The matter is also before the court on

Plaintiff's failure to respond to the court's March 2, 2011 order to show cause for failure to serve

Defendant Baelin.

## STATEMENT OF THE CASE

The following account is taken from Plaintiff's Amended Prisoner Complaint (Doc. No.

11 [Compl.], filed November 22, 2010) and the parties' submissions with respect to this

recommendation.  Plaintiff is currently incarcerated at Centennial Correctional Facility.  His

claims relate to medical treatment for an ankle injury while housed at the Denver Reception and

Diagnostic Center (DRDC) and the Colorado Territorial Correctional Facility (CTCF).

Plaintiff asserts that, on November 7, 2008, he underwent surgery at the Denver Health

Medical Center (DHMC) to remove loose hardware from his left ankle as a result of a past ankle

fusion.  Following the surgery, he was taken to the DRDC infirmary to recover and was placed in

a non-handicapped cell.  He claims that the door of the non-handicapped cell was too narrow for

his wheelchair.  Plaintiff asserts that, on November 9, 2008, his wheelchair became stuck in the

doorway as he was trying to enter his cell for lock down.  He alleges that Defendant Ferguson

intentionally closed the cell door on Plaintiff and his newly operated left ankle became caught in

the closing door resulting in permanent injury.

 Plaintiff asserts that he repeatedly asked to see a doctor following this injury but was

denied.  He also asked to see Dr. Godhardt, the operating orthopaedic surgeon, in accordance

with Dr. Godhardt's post-operative instructions, but was denied.  Plaintiff claims that he did not

see a doctor until December 15, 2008, after he was transferred to CTCF.  At CTCF, Plaintiff saw

Dr. Darrow who determined that Plaintiff had suffered a permanent injury and that Plaintiff

should see an orthopaedic specialist, but Defendant CHP denied the request.

Plaintiff asserts that after numerous grievances he had a meeting with medical staff and

an appointment with a specialist was set for December 26, 2009.  However CHP again denied

the request.  Plaintiff also claims that CTCF and DRDC security staff intervened in his treatment

by attempting to remove his durable medical equipment, particularly his wheelchair.

Plaintiff sues Defendants in their individual and official capacities for deliberate

indifference to a serious medical need in violation of the Eighth Amendment and sues Defendant

Ferguson for excessive force in violation of the Eighth Amendment.  He seeks a temporary

injunction requiring Defendants to provide him with medical care, $100,000 in compensatory

damages, $1 million in punitive damages and a declaration that Defendants violated his

constitutional rights.

## PROCEDURAL HISTORY

Plaintiff filed his Prisoner Complaint on September 20, 2010.  (Doc. No. 3.)  On January

27, 2011, Defendant CHP moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds

that 1) the denial of Plaintiff's desired medical treatment did not amount to deliberate

indifference to Plaintiff's medical needs and 2) Plaintiff failed to allege that any custom, policy

or practice of CHP caused any constitutional injuries.  (Doc. No. 34 [CHP's Mot.].)  Plaintiff

filed a response on March 29, 2011 (Doc. No. 70 [Resp. to CHP]) and CHP filed a reply on April

12, 2011 (Doc. No. 71 [CHP's Reply]).  The motion is ripe for review and recommendation.

On February 7, 2011, the Individual Defendants moved to dismiss pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6) on the grounds that 1) the Individual Defendants, in their official

capacities, are entitled to Eleventh Amendment immunity from suits for monetary damages; 2)

Plaintiff failed to state a cognizable Eighth Amendment claim against the medical defendants; 3)

Plaintiff failed to state a cognizable Eighth Amendment claim against the non-medical

defendants; 4) Plaintiff failed to state a claim for excessive force; 5) Plaintiff failed to

sufficiently allege personal participation on the part of Defendant Shoemaker; and 6) the

Individual Defendants are entitled to qualified immunity in their individual capacities.  (Doc. No.

40 [Individ. Defs. Mot.].)  Plaintiff filed a response on March 29, 2011.  (Doc. No. 69 [Resp. to

Individ. Defs.].)  The Individual Defendants did not reply.  The motion is ripe for review and

recommendation.

On February 28, 2011, Plaintiff filed a document entitled "Order to Show Cause for a

Preliminary Injunction."[1]  (Doc. No. 54 [Mot. Inj.].)  The court construes this document as a

motion for a preliminary injunction.  CHP and the Individual Defendants have responded to

Plaintiff's request for an injunction.  (*See* Doc. Nos. 57, 61, 64, & 67.)  Plaintiff has not filed a

reply.  Also on February 28, 2011, Plaintiff filed a "Motion for Leave to File an Amended

---

[1] Plaintiff had previously filed this document, without a signature, on February 17, 2011.  (Doc. No. 47.)  That document was terminated as duplicative of his February 28, 2011 filing.  (*See* Doc. No. 73.)

Complaint."  (Doc. Nos. 51 & 52 .)[2]  None of the Defendants have responded to Plaintiff's

Motion to Amend.  Both motions are ripe for review and recommendation.

## DEFENDANTS' MOTIONS TO DISMISS

**A.      STANDARD OF REVIEW**

*1.*      **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers

liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell*

*v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent

standards than formal pleadings drafted by lawyers").   However, a *pro se* litigant's "conclusory

allegations without supporting factual averments are insufficient to state a claim upon which relief

can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court

may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has

violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v.*

*Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113

F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round

out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991)

---

[2] Docket Nos. 51 and 52 each contain case captions and are both entitled "Motion for Leave to File an Amended Complaint."  Docket No. 51 contains numbered paragraphs one through four.  Docket No. 52 contains numbered paragraphs five and six.  Accordingly, the court construes Docket No. 52 as a continuation of Docket No. 51 and treats them as a single motion to amend.

(the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### 2.      *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* (citations omitted). The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

### 3.      *Failure to State a Claim Upon Which Relief Can be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies the allegations in the complaint that are not entitled to the assumption of truth, that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause

7

of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (citations omitted).

**B.    DEFENDANT CHP'S MOTION TO DISMISS**

Plaintiff claims that CHP's refusal to approve certain medical treatment amounts to deliberate indifference to Plaintiff's medical needs.  CHP moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  CHP contends that the denial of Plaintiff's desired medical treatment does not amount to deliberate indifference and that Plaintiff failed to allege that any custom, policy or practice of CHP caused any constitutional injuries.

### 1.    Eighth Amendment Claim Pursuant to 42 U.S.C. § 1983

The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 103-04.

A claim for deliberate indifference has both an objective and a subjective component.  To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A medical

need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).  To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.  The official must "know of and disregard an excessive risk to inmate health and safety." *Id.* at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Eighth Amendment does not entitle a prisoner to a particular course of treatment. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).  The subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercised his considered medical judgment." *Self*, 439 F.3d at 1232.  Neither negligence nor medical malpractice violate the Eighth Amendment. *Estelle*, 429 U.S. at 106.  Thus, a prisoner's difference of opinion with medical staff regarding his treatment does not rise to the level of a constitutional violation. *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *see also Estelle*, 429 U.S. at 107.  "In order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need." *Estelle*, 429 U.S. at 106.

For purposes of its motion to dismiss, CHP assumes that Plaintiff's ankle condition is sufficiently serious to meet the objective requirement of the Eighth Amendment.  (CHP's Mot. at 5.)  Accordingly, the court will consider only the subjective component of the deliberate

indifference standard.  CHP argues that Plaintiff cannot establish facts to demonstrate that CHP

possessed the requisite deliberate indifference to meet the subjective requirement of the Eighth

Amendment.  CHP contends that, although Plaintiff complains that he did not receive the

treatment he requested, Plaintiff makes no allegations that his injuries required treatment by a

specialist.  (*Id.* at 6.)  CHP also notes that when Plaintiff did require a specialist—to remove the

loose hardware from his left ankle—CHP approved that treatment.  (*Id.* at 5-6.)

Plaintiff's allegations against CHP relate to certain medical treatment that CHP refused to

approve upon his return to CTCF.  Plaintiff claims that when he saw Dr. Darrow on December

15, 2008, after returning to CTCF, Dr. Darrow determined that Plaintiff had permanent injuries

and he felt that Plaintiff should see an orthopaedic specialist.  (Compl. at 9.)  Plaintiff asked Dr.

Darrow if he could arrange an appointment with Dr. Godhardt, but Dr. Darrrow told him that

CHP would not approve it.  (*Id.* at 13.)  He also asked Dr. Darrow if he could prescribe a scan to

check for further damage, but Dr. Darrow stated that "scans are expensive, the provider would

never approve it."  (*Id.*)  Plaintiff claims he saw Dr. Darrow again on December 22, 2008 and Dr.

Darrow told Plaintiff that CHP had refused the appointment with Dr. Godhardt and any further

treatment, including a scan of the Plaintiff's ankle or the replacement of the orthodic shoe that

Dr. Darrow had prescribed.  (*Id.* at 14.)

Plaintiff further asserts that, after he filed five written grievances between September and

December 2009, CTCF staff held a meeting to discuss Plaintiff's medical treatment and

determined that Plaintiff should have an office visit with a specialist.  (*Id.* at 9.)  The visit was set

for December 26, 2009.  (*Id.*)  He claims that December 26, 2009 came and went without an

appointment because it was cancelled by CHP.  (*Id.*)  In his response brief, Plaintiff elaborates[3]

that the meeting was comprised of "Joyce Crounk, Head of Medical Services, Mary Ann

Aldrich, AIC Representative CTCF, Capt. Mooney, Housing Officer, and Jullie [sic] Russell,

AIC Acting Chief for CDOC."  (Resp. to CHP at 7.)  He claims that these medical professionals

and lay personnel reviewed his medical records and determined that Plaintiff should see a

specialist.  (*Id.*)  "The purpose was to determine what measures it would take to give [Plaintiff]

more mobility."  (*Id.*)  The thrust of these allegations is that CHP was deliberately indifferent to

Plaintiff's medical need by failing to approve medical treatment and by interfering with

prescribed medical treatment.  (*See id.* at 4, 7.)

The court finds that Plaintiff's allegations do not state a plausible Eighth Amendment

claim against CHP.  First, there are no allegations regarding any risk to Plaintiff from seeing the

CTCF doctor as opposed to an outside specialist.  Also, it is unclear whether Dr. Darrow actually

prescribed treatment by a specialist and CHP refused to approve that treatment, or whether, at

Plaintiff's request, Dr. Darrow approached CHP to inquire as to whether it would approve such

treatment, and CHP indicated it would not.  Regardless, the Eighth Amendment does not entitle

Plaintiff to treatment by a specialist.  *Callahan*, 471 F.3d at 1160.  Thus, Plaintiff's factual

allegations do not suggest that CHP was aware of a substantial risk of harm to Plaintiff or that

CHP interfered in prescribed treatment.

---

[3] In his Motion to Amend, Plaintiff seeks to add these additional facts to his complaint.  As
discussed below, because the amendment would be futile, the court recommends that it be denied.

Similarly, while Plaintiff argues that a committee of medical and non-medical personnel determined that Plaintiff should see a specialist, the purpose "was to determine what measures it would take to give [Plaintiff] more mobility." (Resp. to CHP at 7.) Again, these allegations do not suggest a substantial risk to Plaintiff's health. In short, there are insufficient allegations regarding CHP's knowledge of a substantial risk to Plaintiff to satisfy the Eighth Amendment's state of mind requirement. However, even if Plaintiff has pleaded sufficient facts to suggest deliberate indifference on the part of CHP, Plaintiff has not alleged that CHP's actions were pursuant to a policy, custom, or practice.

### 2.    *Municipal policy, custom or practice*

In *Monell v. New York City Department of Social Services*, the Supreme Court held that a local government can be sued under § 1983 for constitutional violations but cannot be held liable merely on account of the unauthorized acts of its agents. 436 U.S. 658, 690-91 (1978). The Tenth Circuit has extended *Monell*'s holding to claims brought under 42 U.S.C. § 1983 against private corporations. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir.2003). CHP asserts that it is the private "healthcare administrator of the DOC reviewing the medical necessity for services related to medical treatment outside of the DOC correctional facilities." (CHP's Mot. at 2.) Plaintiff does not dispute this.

In *Monell*, the Supreme Court explicitly rejected governmental entity liability based on either a *respondeat superior* or vicarious liability theory. 436 U.S. at 691. Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal custom or policy and 2) a direct causal link between the custom or policy and the violation alleged. *Graves v. Thomas*,

450 F.3d 1215, 1218 (10th Cir. 2006).  The Supreme Court subsequently explained the

requirements for imposing liability on a public entity as follows:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly
> attributable to the municipality.  The plaintiff must also demonstrate that, through
> its *deliberate* conduct, the municipality was the "moving force" behind the injury
> alleged.  That is, a plaintiff must show that the municipal action was taken with
> the requisite degree of culpability and must demonstrate a direct causal link
> between the municipal action and the deprivation of federal rights.

*Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in

original).  Under these standards, a municipality can be liable only for its official customs or

policies, *Monell*, at 691, or for the actions of a final policymaker, *Pembaur v. City of Cincinnati*,

475 U.S. 469, 481 (1986).

According to CHP it previously approved Plaintiff's treatment by Dr. Godhardt to

remove the loose ankle hardware, suggesting that CHP does not have a custom or policy of

refusing expensive procedures or treatment at outside facilities.  (CHP's Mot. at 8.)  Plaintiff has

not made such an allegation.  Nowhere in his complaint does Plaintiff allege that CHP's refusal

to approve "a scan" of Plaintiff's ankle or treatment by a specialist was pursuant to any CHP

custom or policy.  Nor has Plaintiff alleged that any final policymaker at CHP made any decision

regarding the treatment of his ankle.

In short, Plaintiff has failed to allege facts to suggest deliberate indifference on the part of

CHP and has not alleged that CHP's decisions regarding his medical treatment were made

pursuant to any custom or policy.  Accordingly, the court finds that Plaintiff has failed to state a

claim against CHP for deliberate indifference under the Eighth Amendment and, therefore, CHP's motion to dismiss should be granted.

## C.   INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Plaintiff sues the Individual Defendants in both their individual and official capacities. They move to dismiss on the grounds that 1) the Individual Defendants, in their official capacities, are entitled to Eleventh Amendment immunity from suits for monetary damages; 2) Plaintiff failed to state a cognizable Eighth Amendment claim against the medical defendants; 3) Plaintiff failed to state a cognizable Eighth Amendment claim against the non-medical defendants; 4) Plaintiff failed to state a claim for excessive force; 5) Plaintiff failed to sufficiently allege personal participation on the part of Defendant Shoemaker; and 6) the Individual Defendants are entitled to qualified immunity in their individual capacities.

### *1.     Eleventh Amendment Immunity*

The Eleventh Amendment "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2009).  It states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Amendment has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the

14

official's office and therefore is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official capacity for monetary damages or retrospective equitable relief are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70-71.

Eleventh Amendment immunity applies whether the relief sought is legal or equitable. *Johns*, 57 F.3d at 1552.  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  However, claims for injunctive and declaratory relief may, in some circumstances, proceed against an official in his or her official capacity.[4]  *Id.*  Whether the Eleventh Amendment provides immunity on a claim for injunctive or declaratory relief depends on whether the relief sought is truly prospective.  *Id.* at 1258-59.  If the relief sought is actually retrospective, it is barred by the Eleventh Amendment.  *Id.*

To the extent Plaintiff seeks monetary relief from the Individual Defendants in their official capacities, the Eleventh Amendment shields them from liability, and the court lacks jurisdiction over Plaintiff's claims.  *See Starkey ex rel. A.B. v. Boulder Cnty. Soc. Serv.*, 569 F.3d 1244, 1260 (10th Cir. 2009) (noting jurisdictional nature of Eleventh Amendment sovereign immunity).  However, to the extent Plaintiff seeks prospective injunctive relief or sues the

---

[4] "A state official in his or her official capacity, when sued for [prospective] injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  *Will*, 491 U.S. at 71 n.10 (citations and quotations omitted).

Individual Defendants in their individual capacities, the Eleventh Amendment does not bar such claims.

### 2.   *Deliberate Indifference to a Serious Medical Need*

In Claim One Plaintiff describes several issues related to the treatment of his ankle.  First, Plaintiff complains that he was not housed in a handicapped cell.  (Compl. at 11.)  Plaintiff asserts that, when he returned to the DRDC infirmary from the ankle surgery at Denver Health, he was "placed in a substandard, unsafe cell" because it was not a handicapped cell equipped with wide cell doors to accommodate his wheelchair and handicapped toilets with safety rails. (*Id.*)  He states that he complained to Defendant Goodwin that with his "bi-lateral knee and hip replacements [he would be] in danger of falling without handrails for the low standard toilet." (*Id.* at 7.)  He claims that she responded, "Mr. Meyer your [sic] a prisoner, how can you expect more?"  (*Id.* at 11.)  Plaintiff asked why he was not placed in a handicapped cell, and was told that there were only two handicapped cells and both were occupied.  (*Id.* at 7.)  Plaintiff alleges that "deliberate indifference by the medical staff placed [him] in dangerous living conditions." (*Id.* at 11.)

Second, Plaintiff alleges deliberate indifference on the part of the medical staff for failing to treat his ankle, for refusing to allow him to see Dr. Godhardt, and for interfering with treatment prescribed by Dr. Godhardt. (*Id.* at 12.)  Plaintiff claims that, after the incident involving the cell door on November 9, 2008, the area where the cell door closed on his ankle was "very hot, swollen and extremely painfull [sic]" and "Plaintiff could not bare [sic] weight on

16

his left foot/ankle." (*Id.*)  He asserts that he was examined by staff at DRDC medical on November 15, 2007 and "Nurse Burt agreed that the site was indeed swollen, hot, and very painfull [sic]" but said, "All I can do is report my findings and leave it up to [Dr. Singh] as to whether he will see you.  I can't give vicodin for the pain as prescribed by Dr. Godhardt the specialist at Denver Health, its [sic] our policy not to administor [sic] vicoden [sic]." (*Id*)

Plaintiff asserts that he repeatedly asked to see Dr. Godhardt.  He also repeatedly asked to see Defendant Singh, the DRDC doctor, about the dangerous living conditions and the failure to follow Dr. Godhardt's instructions.  (*Id.* at 8, 11-12.)  Nevertheless, Plaintiff alleges that medical staff refused to let him see Dr. Godhardt, interfering in Dr. Godhardt's prescribed treatment, and Defendant Singh never examined him.  (*Id.* at 8, 12-13.)

On November 22, 2008, Plaintiff saw Defendant Hoekstra and told her that he had not received medical treatment or seen a doctor for his injury.  (*Id.* at 13.)  Plaintiff asserts that he told Defendant Hoekstra that he had an appointment with Dr. Godhardt but she said that he "would not be keeping that appointment" and she made an appointment for him with Dr. Darrow[5] at CTCF.  (*Id.*)

Plaintiff also claims that on December 22, 2008, Dr. Darrow told Plaintiff that "the provider" and Defendant Shoemaker refused the appointment with Dr. Godhardt, or any further treatment, including a scan of Plaintiff's ankle or the replacement of Plaintiff's orthodic shoe.

---

[5] Dr. Darrow is named as a defendant in Plaintiff's complaint however he has not yet been served. Accordingly, this recommendation does not address Plaintiff's claims against Dr. Darrow.

(*Id.* at 14.)  Plaintiff asserts that "[i]t is evident that the medical department is taking the least expensive method of treat[ment]" and argues that if an official "intentionally decides to take an easier or cheaper but less effective course of treatment, he/she may be deliberate [sic] indifferent."  (*Id.*)  Plaintiff states that, since November 7, 2008, he has "filed numerous and proper grievances and kites to notify any and all parties of existing conditions to do with his various medical and mobility needs" and that "[t]his effort on the part of this Plaintiff has been met by deliberate indifference and failure to treat injury/injuries properly or at all."  (*Id.*)

The third issue relates to the removal of his wheelchair.  Plaintiff claims that on February 6, 2009, Defendant Hiedenthaul, at the request of Defendant Stockman, ordered Defendant McMillan to take Plaintiff's wheelchair.  (*Id.* at 15.)  Plaintiff advised Defendant McMillan that just five days earlier he had received a wheelchair permit from Dr. Darrow (*Id.*)  Defendant McMillan left to tell Defendant Hiedenthaul about the permit and when he returned he told Plaintiff that he had orders to take the new permit and if Plaintiff refused Defendant McMillan was to take him to segregation.  (*Id.*)  Plaintiff alleges that Defendants Hiedenthaul and Stockman altered medical records to justify the removal of Plaintiff's wheelchair and "interfered with [his] medical treatment by supperceding [sic] Dr. Darrows [sic] medical orders."  (*Id.*)

Finally, Plaintiff complains about the care he received from Defendant Mitchell on February 20, 2009.  He asserts that he saw Defendant Mitchell after several days of severe ankle pain and bleeding blisters on Plaintiff's ankle.  (*Id.*)  He claims his lower leg was severely swollen and hot to the touch.  (*Id.*)  He alleges that Defendant Mitchell gave him Band-Aids and

bacitracin and told Plaintiff to treat his ankle himself.  (*Id.* at 15-16.)  When Plaintiff asked Defendant Mitchell about his swollen ankle and constant pain, Plaintiff alleges that Defendant Mitchell responded with deliberate indifference, "Write another kite, your kite today was for blisters.  I will only treat one request at a time."  (*Id.* at 16.)

The allegations in Claim Two involve Defendant Meiggs and John Does 1 and 2. Plaintiff states that on November 21, 2008 he was transferred from the DRDC to CTCF.  (*Id.* at 17.)  He claims that John Doe I took him to the bus in a wheelchair, but would not help Plaintiff onto the bus.  (*Id.*)  Plaintiff claims that the bus driver helped him onto the bus but, upon arrival at CTCF, Defendant Meiggs would not give Plaintiff a wheelchair or any help, forcing Plaintiff to "drag himself up the stairs on his butt."  (*Id.*)  When John Doe 2 came out and told him to hurry, Plaintiff asked for help but John Doe 2 said, "You're on your own, I'll lock you out if you don't get a move on."  (*Id.*)  Plaintiff claims that, with a great deal of pain he was able to get inside.  (*Id.*)  Plaintiff alleges that these actions by Defendant Meiggs and the John Does violated the Eighth Amendment.  (*Id.*)

As previously described, an Eighth Amendment claim for deliberate indifference to a serious medical need has two components.  A plaintiff must show that his medical need was sufficiently serious and that prison officials acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.  The Individual Defendants do not address the seriousness of Plaintiff's medical need.  Based on Plaintiff's allegation that he had surgery on his left ankle to remove loose hardware, was in a wheelchair and, after the cell door closed on his operated ankle, it was

19

hot, swollen and painful, the court will assume that Plaintiff's medical need was sufficiently serious and proceed to consider the subjective component.

The Individual Defendants argue that Plaintiff's claims against the medical defendants, including Defendants Singh, Shoemaker, Mitchell, Stockman, Goodwin and Hoekstra, fail because Plaintiff fails to sufficiently allege that the medical defendants consciously disregarded a substantial risk of serious harm to his health or safety. (Individual Defendants' Mot. at 7.) They contend that Plaintiff's claim is essentially based on disagreement with a medical diagnosis and treatment. (*Id.*) The Individual Defendants also argue that Defendants Hiedenthaul, McMillan and Meiggs are not medical providers so they are "not qualified to make medical decisions or evaluate an offender's medical condition or determine what health appliances are necessary" and are entitled to rely on the opinions of medical professionals. (*Id.* at 9-10.)

Plaintiff's allegations amount to claims that the medical staff was deliberately indifferent to a serious medical need by placing him in a non-handicapped cell, by refusing to allow him to see a specialist and failing to implement treatment prescribed by a specialist, by altering medical records to remove his wheelchair three months post-surgery, by refusing to provide a wheelchair or otherwise help him ambulate when he was transferred from DRDC to CTCF on November 21, 2008, approximately two weeks after surgery, and by failing to treat or improperly treating his ankle on February 20, 2009. The court notes that Plaintiff does not attribute all of these instances of alleged deliberate indifference to all of the Defendants.

Concerning Plaintiff's allegations that Defendants failed to treat his ankle, refused to let him see Dr. Godhardt, and interfered in Dr. Godhardt's prescribed treatment, these allegations fail to make out an Eighth Amendment claim.  Plaintiff specifically names only three Defendants in these allegations: Defendant Singh, Defendant Hoekstra and Defendant Shoemaker.  The bulk of his allegations are directed at the "medical staff" generally.

Plaintiff's complaint as to Dr. Singh appears to be that, despite his numerous requests, Dr. Singh never examined Plaintiff while he was at the DRDC and did not respond to Plaintiff's requests to see Dr. Godhardt.[6]  As to Defendant Hoekstra Plaintiff complains that she told him he would not keep his appointment with Dr. Godhardt and instead made an appointment for him with Dr. Darrow at CTCF.  As to Defendant Shoemaker, Plaintiff alleges that, along with CHP, she would not approve a follow-up appointment with Dr. Godhardt, nor would she approve a scan of Plaintiff's ankle.[7]  Plaintiff has not alleged that any of these Defendants were aware of any risk to Plaintiff or disregarded any risk.

---

[6] In his response, Plaintiff indicates that he "began asking to see Dr. Singh from the day [he] entered the infirmary because [he] did not have confidence in the nurses working there."  (Resp. to Individ. Defs. at 4.)

[7] The Individual Defendants argue that Plaintiff has failed to allege personal participation on the part of Defendant Shoemaker.  Personal participation is an essential allegation in a § 1983 civil rights action because a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position.  *Pembaur*, 475 U.S. at 479; *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 29 S. Ct. at 1948.  Plaintiff does not appear to sue Defendant Shoemaker in her supervisory capacity as he alleges that she herself refused his appointment with Dr. Godhardt.  Thus, the court finds the Individual Defendants' argument regarding personal participation inapposite.

To the extent Plaintiff asserts that any of the Defendants failed to treat him, the allegation

is misleading.  He was examined and treated by medical staff at DRDC on November 15, 2007

and November 22, 2007.[8]  To the extent Plaintiff asserts that any of the Defendants failed to treat

him by not following Dr. Godhardt's prescribed treatment, the allegations in the complaint are

insufficient.  The only treatment prescribed by Dr. Godhardt that Plaintiff identifies in his

complaint is a prescription for vicodin.  (*See* Compl. at 12.)  This is not a prescribed treatment,

but rather medication to relieve pain.  Nurse Burt, who is not a defendant in this case, refused to

give Plaintiff vicodin because it was against CDOC policy, but Plaintiff received Tylenol 3

instead.  (Id.)  In his response, Plaintiff states that "Dr. Godhardt submitted a 'Physician's Order

Sheet' to DRDC Infirmary requesting the plaintiff's return to DHMC orthopedic department for

follow-up care."  (Resp. to Individ. Defs. at 6.)  Plaintiff has not made any other allegations

regarding prescribed treatment that any of the defendants refused to follow.

Whether to consult a specialist or undertake additional medical testing are matters that

traditionally fall within the scope of medical judgment.  *Self*, 439 F.3d at 1232. To the extent

Plaintiff disagrees with the treatment he received, such disagreement is not actionable under the

Eighth Amendment.  *Johnson*, 6 F.3d at 692.  The Constitution does not guarantee any particular

treatment or treatment by a specialist.  *Callahan*, 471 F.3d at 1160; *Self*, 439 F.3d at 1232.  The

---

[8] In his response, Plaintiff describes additional instances of treatment.  On November 10, 2008, he was removed from vicodin and given Tylenol 3 for the pain.  (Resp. to Individ. Defs. at 5.)  He also saw medical staff for the pain and swelling on November 14, 2008 and November 17, 2008.  (*Id.*)  On November 17th he was placed on an antibiotic for the "swelling painful condition."  (*Id.*)

court concludes that Plaintiff has not pleaded sufficient facts to state a claim for deliberate indifference on these grounds.

Plaintiff also fails to state a claim regarding his placement in a non-handicapped cell which had difficulty accommodating his wheelchair. Plaintiff specifically identifies only two Defendants in connection with his placement in a non-handicapped cell. As to Defendant Goodwin, Plaintiff alleges that he complained to her that, because of his knee and hip replacements, he was in danger of falling without handrails for the toilet. (Compl. at 7.) While one could argue that Defendant Goodwin then had knowledge of a risk of falling, Plaintiff did not fall. Rather he was allegedly injured when the cell door was closed on his ankle due to difficulty in getting the wheelchair through the cell door. None of Plaintiff's allegations suggest that Defendant Goodwin knew of a serious medical need of the Plaintiff and thereafter disregarded it. Moreover, Defendant Goodwin told Plaintiff that there were only two handicapped cells and both were occupied. Accordingly, Plaintiff has not alleged facts to suggest that Defendant Goodwin was deliberately indifferent. As to Defendant Singh, Plaintiff claims that he asked to see Dr. Singh on numerous occasions regarding his issue with the non-handicapped cell but was denied. Plaintiff has not made any allegations regarding any knowledge of a serious medical need of Plaintiff on Defendant Singh's part, especially with respect to provision of a handicapped cell. Plaintiff has made no allegations as to the remaining defendants. The court finds that Plaintiff has failed to state a claim under the Eighth Amendment for his placement in a non-handicapped cell.

Plaintiff also fails to state a claim for the removal of his wheelchair.  This claim is directed at Nurse Stockman and non-medical Defendants Hiedenthaul and McMillan.  First, while Plaintiff alleges that these defendants altered medical records to justify removal of his wheelchair, he never actually alleges that the wheelchair was taken.[9]  Altering medical records alone does not constitute an Eighth Amendment violation.  Moreover, Plaintiff does not specifically allege how the medical records were altered—he only states that Defendants confiscated his wheelchair permit.  Assuming that his wheelchair permit and his wheelchair were taken from him, Plaintiff still has not alleged that this exposed him to a substantial risk of harm, or that any of these defendants were aware of any risk of harm to Plaintiff without a wheelchair some three months after this ankle surgery.  Accordingly, Plaintiff has not stated a claim for deliberate indifference in relation to the removal of his wheelchair.

Similarly, Plaintiff's allegations against Defendant Mitchell do not state a claim for an Eighth Amendment violation.  According to Plaintiff, Defendant Mitchell provided Plaintiff with Band-Aids and bacitracin to treat the blisters on his ankle but allegedly would not address the swelling and pain because Plaintiff had not included it in his kite.  Plaintiff has not alleged that the swelling and pain were distinct from the blisters for which he received treatment.  Even

---

[9] In his response, Plaintiff contends that, on order from Dr. Darrow, Nurse Walker issued him a sixty-day wheelchair permit on February 2, 2009 and on February 6, 2009 Defendant Hiedenthaul asked Nurse Stockman for assistance removing Plaintiff's wheelchair.  (Resp. to Individ. Defs. at 9.)  He claims that Nurse Stockman falsified records to remove his wheelchair and that the wheelchair was returned within days of his filing a grievance.  (*Id.*)  Although this factual description differs slightly from that in Plaintiff's complaint, it does not change the court's analysis.  For purposes of this Recommendation and at this stage of the proceedings the court will infer that Plaintiff's wheelchair was physically removed from his possession for some period of time.

assuming that these were distinct medical problems, Plaintiff has not alleged a serious medical

need apart from the blistering skin nor a substantial risk to Plaintiff's health from the swelling or

that Defendant Mitchell was aware of such a risk.  At most, Plaintiff's allegations suggest

negligence, but neither negligence nor medical malpractice is actionable under the Eighth

Amendment.  *Estelle*, 429 U.S. at 106.  Therefore the court finds that Plaintiff has failed to state

a claim for deliberate indifference against Defendant Mitchell.

The allegations in Claim Two also are insufficient to state a claim against Defendant

Meiggs under the Eighth Amendment.  While Plaintiff alleges that, upon arrival at CTCF, the

bus driver went inside to get a wheelchair and help for Plaintiff, and on his return told Plaintiff

that Defendant Meiggs would not give Plaintiff a wheelchair or any help, Plaintiff has not

alleged any facts regarding what the bus driver told Defendant Meiggs to suggest that Defendant

Meiggs was aware of a serious medical need of Plaintiff or a substantial risk of harm which he

disregarded.

In his response, Plaintiff claims that Defendant Meiggs was "made aware of the

plaintiff's condition by the bus driver."  (Resp. to Individ. Defs. at 7.)  He asserts that the bus

driver told Defendant Meiggs that Plaintiff was brought to the bus at DRDC in a wheelchair, that

the bus driver had to assist Plaintiff onto the bus, and that a wheelchair and assistance was

needed to enable Plaintiff to enter the receiving area at CTCF.  (*Id.* at 7-8.)  Plaintiff seeks to

amend his complaint to add these factual allegations as well as the allegation that, "[a]fter

crawling 30 feet on hands and knee's [sic], plaintiff entered receiving, [and] Meiggs said, 'That

wasn't so bad now was it?'" (Doc. No. 51 at 5.)  Plaintiff also proposes to allege that he was

"given a wheelchair after checking in and processing his property and assisted to cellhouse by an

inmate pusher."  (*Id.*)  The Individual Defendants did not file a reply to Plaintiff's response or

respond to Plaintiff's Motion to Amend with these facts.

        The court finds that the addition of these factual allegations would sufficiently state a

claim for deliberate indifference under the Eighth Amendment.  If allowed, Plaintiff's amended

complaint would allege that Meiggs knew that Plaintiff was transported to the bus at DRDC in a

wheelchair and needed assistance from the bus driver to get on and off the bus, yet nevertheless

refused to provide a wheelchair and assistance to transport Plaintiff from the bus to receiving at

CTCF.  If accepted as true, these facts suggest deliberate indifference on the part of Defendant

Meiggs in allowing Plaintiff to crawl from the bus to the CTCF receiving area.

        In their motion, the Individual Defendants argue that Defendant Meiggs is not a medical

provider, is not qualified to make medical decisions, evaluate an offender's medical condition, or

determine what health appliances are necessary, and is entitled to rely on the diagnoses and

orders of medical professionals.  (Individ. Defs. Mot at 9-10.)  The Individual Defendants

contend that "making an informed decision regarding Plaintiff's need for a wheelchair is not akin

to the criminally recklessness [sic] state of mind that is required to show deliberate indifference."

(*Id.* at 10.)

        There is no indication, in Plaintiff's complaint, proposed amendments, or the Individual

Defendant's Motion that Defendant Meiggs relied on a physician's orders when he allegedly

denied Plaintiff a wheelchair for transport to CTCF receiving.  In fact, it appears that no such

orders existed given that Plaintiff alleges in his complaint that he was transported *to* the bus at

DRDC in a wheelchair and proposes to amend his complaint to allege that he was given a

wheelchair after processing at CTCF.  Moreover, a prisoner's treatment by medical professionals

does not relieve prison officials of all responsibility under the Eighth Amendment.  Where it is

evident to a lay person that a prisoner is receiving inadequate or inappropriate treatment, non-

medical prison officials still have an obligation to provide medical care.  *See Estelle*, 429 U.S. at

103; *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002); *see also Weatherford ex rel.*

*Thompson v. Taylor*, No. 09-7018, 2009 WL, at *3 (10th Cir. Oct. 5, 2009) (unpublished) (citing

cases); *Hayes v. Snyder*, 546 F.3d 516, 526-27 (7th Cir. 2008).

Plaintiff's proposed amendments regarding the denial of a wheelchair and physical

support for transport between the bus and the CTCF receiving area, if proven, suggest that

Plaintiff was subjected to pain and suffering that served no penological purpose.  *Estelle*, 429

U.S. at 103.  As discussed below, this amendment should be allowed.  Therefore, the Individual

Defendants' Motion to Dismiss should be denied as to Plaintiff's claims for monetary damages

against Defendant Meiggs in his individual capacity.[10]

---

[10] Plaintiff's request for declaratory relief is similar to his claim for damages in that for both, Plaintiff seeks a determination that a past constitutional violation occurred.  *See F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995).  However, in such a situation, declaratory relief is "superfluous in light of the damages claim."  *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir.1997).  Plaintiff's request for injunctive relief "to provide any and all medical care" is not applicable to Defendant Meiggs, a non-medical Defendant.

### 3.    *Excessive Force*

In Claim Three, Plaintiff alleges that Defendant Ferguson used excessive force when he closed the cell door on Plaintiff's ankle.  He asserts that on November 9, 2008, Defendant Ferguson "demanded that the inmates lockdown, and don't stall around.  I'm fed up with taking too long to lock down."  (Compl. at 18.)  Plaintiff claims that he "went directly to his cell and attempted to enter [but] the wheelchair became stuck in the narrow door."  (*Id.*)  He asserts that he "was visible to both c/o's" and that "c/o Jones ran toward this Plaintiff's cell waving at Ferguson in the control tower."  (*Id.*)  Plaintiff states that Defendant Ferguson later approached him and said, "I'm glad to see that your [sic] not hurt, but I've told you people to lock down when told to close."  (*Id.*)  Plaintiff alleges that he told Defendant Ferguson, "You didn't have to close the cell door on me.  C/o Jones was in plain site [sic] waving at you" to which Defendant Ferguson responded, "Your cell is in a blind spot, I didn't see you."  (*Id.*)

When a plaintiff claims an Eighth Amendment violation based on an official's use of excessive force, the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  In contrast to deliberate indifference claims, a serious injury is not a required element.  *See Wilkins v. Gaddy*, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (per curiam).  "This is not to say that the 'absence of serious injury' is irrelevant to the [] inquiry[;] 'the extent of injury suffered [] is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.'"  *Id.* (quoting *Hudson*, 503 U.S.

28

at 7).  However, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10 (quotations omitted) (emphasis in original).

In the Individual Defendants' Motion to Dismiss, Defendant Ferguson argues that Plaintiff's own complaint, reciting Defendant Ferguson's claim that Plaintiff's cell was in a blind spot and Defendant Ferguson did not see Plaintiff, demonstrates that the alleged incident was not the result of malicious or excessive action on the part of Defendant Ferguson.  (Individ. Defs. Mot. at 11.)

In his response Plaintiff claims that "a large curved mirror was located in a position where [Defendant Ferguson] had a full range view of the pod" and "Sgt. Jones was in view of the defendent [sic] at all times and was warning him that a dangerous situation existed."  (Resp. to Individ. Defs. at 12.)  Plaintiff seeks to amend his complaint to add these factual allegations. The Individual Defendants did not file a reply to Plaintiff's response or respond to Plaintiff's Motion to Amend with these facts.

Such additional factual allegations would be sufficient to state a claim for excessive force under the Eighth Amendment.  If allowed, Plaintiff's amended complaint would allege that Plaintiff was stuck in the cell doorway and Defendant Ferguson could see Plaintiff in the mirror and could see Sergeant Jones warning him of a dangerous situation, but Defendant Ferguson nevertheless closed the cell door.  If accepted as true, these facts suggest a plausible claim for

malicious and excessive force against Defendant Ferguson.  As discussed below, this amendment should be allowed.  Therefore, the Individual Defendants' Motion to Dismiss should be denied as to Plaintiff's claims for monetary damages against Defendant Ferguson in his individual capacity.[11]

### 4.     *Qualified Immunity*

The Individual Defendants also assert the defense of qualified immunity.  The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss.  *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988).  Whether raised on summary judgment or by motion to dismiss, once asserted, the burden shifts to the plaintiff to establish 1) that the defendant's actions violated a federal constitutional or statutory right and 2) that the federal right was clearly established at the time of the

---

[11] Plaintiff's claims for declaratory and injunctive relief against Defendant Ferguson fail for the same reasons they fail as to Defendant Meiggs.

challenged conduct.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also*

*Losavio*, 847 F.2d at 646.  While the plaintiff bears this burden, at the motion to dismiss stage,

well-pleaded factual allegations are taken as true, although the court must consider whether they

plausibly give rise to a claim for relief.  *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010).

Moreover, "once the defense has been raised, the court must allow the plaintiff the limited

opportunity allowed in Fed. R. Civ. P. 12(b)(6) and 56 to come forward with facts or allegations

sufficient to show both that the defendant's alleged conduct violated the law and that that law

was clearly established when the alleged violation occurred."  *Losavio*, 847 F.2d at646.

With the exception of Defendants Meiggs and Ferguson, Plaintiff has not established that

the Individual Defendants violated a constitutional right.  As to the other Individual Defendants,

Plaintiff has failed to state a claim for deliberate indifference to a serious medical need.

Accordingly, the Individual Defendants, except Defendants Meiggs and Ferguson, are entitled to

qualified immunity.

As to Defendant Meiggs, Plaintiff's proposed amendments state a claim for deliberate

indifference under the Eighth Amendment.  If Plaintiff is able to prove his allegations, they

suggest that Defendant Meiggs violated Plaintiff's constitutional rights.  The Supreme Court

recognized that deliberate indifference to serious medical needs of prisoner's constitutes the

unnecessary and wanton infliction of pain in 1976 and this includes less serious denials that may

result in pain and suffering and which serve no penological purpose.  *Estelle*, 429 U.S. at 103.

Thus, the right was clearly established at the time Defendant Meiggs allegedly refused to provide

Plaintiff with a wheelchair for transportation between the bus and CTCF and forced him to crawl or drag himself to the receiving area.  Therefore, Defendant Meiggs is not entitled to qualified immunity.

As to Defendant Ferguson, Plaintiff's proposed amendments state a claim for excessive force under the Eighth Amendment and, if Plaintiff is able to prove his allegations, suggest that Defendant Ferguson violated a constitutional right.  In 1992, *Hudson* established that malicious and sadistic force violates the Eighth Amendment.  Thus, the right was clearly established at the time that Defendant Ferguson allegedly intentionally closed the cell door on Plaintiff only days after his surgery.  Defendant Ferguson, therefore, is not entitled to qualified immunity.

### PLAINTIFF'S MOTION TO AMEND

Plaintiff filed his Motion to Amend on February 28, 2011, claiming that, since filing his complaint, he has determined that "he failed to include more and/or different facts that would effect his case in a less equitable manor [sic]."  (Doc. No. 51 at 1.)

Pursuant to Fed. R. Civ. P. 15(a), "[t]he court should freely give leave (to amend the pleadings) when justice so requires."  *See also Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.,* 353 F.3d 832, 842 (10th Cir. 2003)*; York v. Cherry Creek Sch. Dist. No. 5,* 232 F.R.D. 648, 649 (D. Colo. 2005).  The Supreme Court has explained the circumstances under which denial of leave to amend is appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the

32

merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Triplett v. LeFlore Cnty., Okl.*, 712 F.2d 444, 446 (10th Cir. 1983).

With the exception of his proposed allegations regarding Defendants Meiggs and Ferguson, Plaintiff's proposed amendments are futile. He seeks to make additional allegations that he was not permitted to see Dr. Godhardt and that treatment was denied (Doc. No. 51 at 3), that Dr. Godhardt's medical orders were not followed (Doc. No. 52 at 2), that he only received minimal medical treatment at DRDC after his ankle was injured in the cell door (Doc. No. 51 at 4), and that he did not see a doctor at the DRDC and no x-rays were taken (Doc. No. 52 at 1). The court has already determined that such allegations do not state a claim for deliberate indifference because the Constitution does not guarantee any particular treatment or treatment by a specialist and therefore disagreement regarding medical treatment is not actionable under the Eighth Amendment. Accordingly these proposed allegations would be futile and the amendment should be denied.

Plaintiff also proposes additional allegations against Defendant CHP. As mentioned above, his proposed amendment describes the medical and non-medical personnel who attended

a "staffing" on December 15, 2009 and reviewed his medical records and determined that

Plaintiff should see "an outside orthopaedic physician."  (Doc. No. 52 at 3.)  He also alleges that

Defendant CHP cancelled that appointment in a letter which stated: "This letter is to inform you

that the utilization management committee for CDOC has reviewed your request for an office

visit to the orthopedic specialist.  The service(s) requested were determined not medically

necessary/covered for the following reason: the information provided does not support the

medical necessity for the service requested."  (*Id.* at 4.)

The court has also already determined that even with these additional factual allegations

Plaintiff fails to state a claim against Defendant CHP because he fails to allege that Defendant

CHP was aware of any serious medical condition or any risk to Plaintiff and because he fails to

allege that Defendant CHP's decision not to approve treatment was pursuant to any custom or

policy.  Because these proposed allegations would be futile, the amendment should be denied.

As noted, Plaintiff also seeks to amend his complaint regarding Defendant Meiggs's

denial of a wheelchair when he arrived at CTCF on November 21, 2008.  He proposes to allege

that the bus driver "informed Sgt. Meiggs that the plaintiff required a wheelchair since that was

how he got to the bus and [the bus driver] had to assist this plaintiff on the bus and off the bus."

(Doc. No. 51 at 5.)  Plaintiff states that "even a lay person like the bus driver could see that the

plaintiff was injured and could not put pressure on his bandaged left ankle." (*Id.*)  He further

alleges that "[a]fter crawling 30 ft. on hands and knee's [sic] plaintiff entered receiving [and]

Meiggs said 'that wasn't so bad now was it?'" (*Id.*)  Finally he states that he "was given a

wheelchair after checking in and processing his property and assisted to cellhouse by an inmate pusher." (*Id.*)

The court has determined that with these additional allegations, Plaintiff states a claim for deliberate indifference under the Eighth Amendment against Defendant Meiggs. Accordingly, Plaintiff's proposed amendments are not futile. There is no evidence or argument of undue delay, bad faith or dilatory motive, previous failure to cure deficiencies or undue prejudice to the Individual Defendants. Accordingly, the additional allegations regarding Defendant Meiggs's alleged deliberate indifference should be allowed.

As to Defendant Ferguson's alleged use of excessive force, Plaintiff proposes to add that Defendant Ferguson "had full view of the plaintiff via a curved mirror and was also warned by c/o Jones who was running to the aid of the plaintiff." (*Id.* at 2.) Plaintiff claims that Defendant Ferguson "continued to close the door in spite of the eminant [sic] danger to the plaintiff." (*Id.*) The court has also determined that with these additional allegations, Plaintiff states a claim against Defendant Ferguson for excessive force under the Eighth Amendment. Plaintiff's proposed amendments therefore are not futile and there is no evidence or argument of undue delay, bad faith, dilatory motive, failure to cure deficiencies or undue prejudice. Thus, the additional allegations against Defendant Ferguson should be allowed.

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In his "Order to Show Cause for a Preliminary Injunction" Plaintiff seeks to enjoin Defendants "from denying further, the plaintiff from seeing a orthopeadic [sic] specialist as prescribed and requested."  (Doc. No. 54 at 2.)

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established.  *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir. 1964).  The burden is on the movant to establish his right to the relief requested.  *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).  To obtain a preliminary injunction, the movant must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that he will eventually prevail on the merits. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).  The movant's right to relief must be clear and unequivocal.  *Penn*, 528 F.2d at 1185.

The court has found that Plaintiff has failed to state a claim for deliberate indifference as to all Defendants except Defendant Meiggs.[12]  Plaintiff's claim against Defendant Meiggs is based on Meiggs's alleged refusal to provide a wheelchair for transport when Plaintiff arrived at CTCF by bus on November 21, 2008.  The injunction Plaintiff seeks—essentially an order that Defendants allow Plaintiff to see an orthopaedic specialist—is not directed at Meiggs alleged conduct.  Similarly, Plaintiff's excessive force claim against Defendant Ferguson is separate and

---

[12] The remaining Defendant Ferguson is accused of using excessive force.

36

distinct form Plaintiff's allegations of deliberate indifference and his request for injunctive relief.

Given the court's determination that Plaintiff has failed to state a claim for deliberate

indifference, Plaintiff has not established a substantial likelihood of success on the merits.

Accordingly, the court recommends that the preliminary injunction be denied.

## ORDER TO SHOW CAUSE

This matter is also before the court on Plaintiff's failure to respond to the court's Order to

Show Cause.  (Doc. No. 56.)  Plaintiff's Amended Prisoner Complaint asserts claims against

Nurse Baelin.  On December 1, 2010, Judge Phillip A. Brimmer issued an Order Granting

Service by United States Marshal.  (Doc. No. 15.)  On December 7, 2010 the Colorado

Department of Corrections returned a waiver of service to the court, unexecuted as to Ms.

Baelin, stating that Ms. Baelin is not a current DOC employee and could not be identified as a

former employee.  (Doc. No. 17.)

Pursuant to Fed. R. Civ. P. 4(m),

[i]f a defendant is not served within 120 days after the complaint is filed, the
court—on motion or on its own after notice to the plaintiff—must dismiss the
action without prejudice against that defendant or order that service be made
within a specified time.  But if the plaintiff shows good cause for the failure, the
court must extend the time for service for an appropriate period.

More than 120 days have passed since the Amended Prisoner Complaint was filed in this matter

and Ms. Baelin has yet to be served.  On March 2, 2011, this court ordered Plaintiff to show

cause in writing, on or before March 23, 2011, why the claims against Ms. Baelin should not be

dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for lack of service.  (Doc. No. 56.) Plaintiff has not responded to the Order to Show Cause.

Fed. R. Civ. P. 4(m) authorizes the court to dismiss a case against unserved defendants unless the plaintiff can show good cause for his failure to serve.  Here, Plaintiff has failed to provide good cause for his failure to timely serve Ms. Baelin.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that the "Motion to Dismiss Plaintiff's Amended Complaint from Defendant Correctional Health Partners" (Doc. No. 34) be GRANTED; and

RECOMMENDS that the "Motion to Dismiss Plaintiff's Prisoner Complaint (Doc. #11)" by Defendants Singh, Ferguson, McMillan, Shoemaker, Meiggs, Mitchell, Hiedenthaul, Stockman, Goodwin, and Hoekstra be GRANTED IN PART and DENIED IN PART.  The court recommends that the motion be DENIED as to Plaintiff's claim for monetary damages against Defendants Meiggs and Ferguson and GRANTED in all other respects; and

RECOMMENDS that Plaintiff's "Motion for Leave to File an Amended Complaint" (Doc. No. 51) be GRANTED IN PART and DENIED IN PART.  The court recommends that the motion be GRANTED as to Plaintiff's proposed allegations against Defendants Meiggs and Ferguson and DENIED in all other respects.  The court further recommends that Plaintiff be ordered to file a second amended complaint containing only the allegations exactly as they appear in Docket No. 51 ¶¶ 1 and 4; and

38

RECOMMENDS that Plaintiff's "Order to Show Cause for a Preliminary Injunction" (Doc. No. 54) be DENIED; and

RECOMMENDS that the claims against Ms. Baelin be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for lack of service.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of April, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge