IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02302–PAB–KMT

JOHN M. MEYER, JR.,

    Plaintiff,

v.

MR. FERGUSON (individual capacity) Sgt. DRDC Infirmary,
MR. MEIGGS (individual capacity) Intack Srt. CTCF,
OFFICER LUIS GARCIA, CENTRAL TRANSPORTATION UNIT, (individual and official capacity), and
CORRECTIONS OFFICER MULAY (individual and official capacity),

    Defendants.

___

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on Defendants' Motion for Summary Judgment. (Doc. No. 123, filed Jan. 20, 2012 [Mot. Summ. J.].) For the following reasons, the court recommends that Defendants' motion be granted and that summary judgment be entered in favor of Defendants on all of Plaintiff's claims.

**FACTUAL BACKGROUND**

The following factual background is taken from Plaintiff's Amended Prisoner Complaint (Doc. No. 11, filed November 22, 2010 [Am. Compl.]); Plaintiff's Motion for Leave to File Amended Complaint (Doc. No. 86, filed June 24, 2011 [hereinafter "Supplement to the

Amended Complaint"]), which the court has construed as a Supplement to Plaintiff's Complaint (*see* Minute Order, Doc. No. 88, filed June 28, 2011); and Defendants' Motion for Summary Judgment. Plaintiff is currently incarcerated at Centennial Correctional Facility of the Colorado Department of Corrections (CDOC). (Mot. Summ. J. at 1.) His claims relate to his treatment while housed at the Denver Reception and Diagnostic Center (DRDC) and while being transported to the Colorado Territorial Correctional Facility (CTCF).

Plaintiff asserts that, on November 7, 2008, he underwent surgery at the Denver Health Medical Center to remove loose hardware from his left ankle as a result of a past ankle fusion. (Am. Compl. at 7.) After his surgery, Plaintiff was taken to the DRDC infirmary to recover and was placed in a non-handicapped cell. (*Id.*) On November 9, 2008, as Plaintiff attempted to enter his cell for lockdown, Plaintiff's wheelchair became stuck in the cell doorway because the doorway was too narrow to accommodate his wheelchair. (*Id.* at 8.) Plaintiff maintains that Defendant Ferguson had a full view of Plaintiff while he was stuck in the cell doorway through a larged curved mirror. (Supp. Am. Compl. at 2.) Additionally, Plaintiff alleges that while running to aid Plaintiff, Sergeant Jones, an on-duty correctional officer, warned Defendant Ferguson that Plaintiff was stuck in his cell doorway. (*Id.*) Nevertheless, although Plaintiff was still stuck in his cell doorway, Defendant Ferguson closed Plaintiff's cell door by turning a knob that controlled the opening and closing of all of the cell doors in the DRDC infirmary. (*Id.*; Mot. Summ. J., Ex. A-1, Aff. of Clifford Ferguson, ¶ 7 [Ferguson Aff.].) Plaintiff maintains that his left ankle was caught in the closing door, which caused "permanent damage." (Am. Compl. at 8.)

Nearly three weeks later, on November 21, 2008, Plaintiff was transported to CTCF. (*Id.* at 17.) Plaintiff maintains that, at the time the bus arrived at DCDF, Defendant Garcia, formerly identified as John Doe 1, told Plaintiff to get out of his wheelchair and onto the bus. (*Id.*) Defendant Garcia also told Plaintiff "don't expect any help from me." (*Id.*) Nevertheless, it appears that Defendant Garcia indeed helped Plaintiff onto the bus. (*Id.*)

Upon arriving at CTCF, Defendant Garcia helped Plaintiff off the bus. (Supp. Am. Compl. at 2-3.) Defendant Garcia then went into CTCF to obtain a wheelchair; however, when he returned he informed Plaintiff that "Sgt. Meiggs [sic][1] won't give you a wheel chair or any help." (Am. Compl. at 17.) Consequently, Plaintiff states that he was required crawl "30 feet on hands and knees" (Supp. Am. Compl. at 3) and then had to drag "himself up the stairs on his butt" into CTCF intake area (Am. Compl. at 17). While doing so, Defendant Mulay, formerly identified as John Doe 2, approached Plaintiff and told him to "get off your butt, we don't have all day." (Am. Compl. at 17.) After Plaintiff asked for help, Defendant Mulay told Plaintiff "your on your own, I'll lock you out if you don't get a move on." (*Id.*) Finally, after arriving in the CTCF intake area, Defendant Meigs allegedly stated to Plaintiff "That wasn't so bad now was it?" (Supp. Am. Compl. at 3.)

---

[1] Although the caption of the Complaint suggests that Defendant Meigs's last name is spelled "Meiggs," it appears that the correct spelling is "Meigs." (*See* Mot. Summ. J., Ex. A-4, Affidavit of Carl Meigs [Meigs Aff.].)

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing his original Complaint on September 9, 2010. (Doc. No. 3 [Compl.]).  Plaintiff subsequently filed his Amended Complaint on November 22, 2010.  (*See* Am. Compl.)  Therein, Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendants Ferguson, Meigs, John Doe 1, and John Doe 2, as well as eight other former defendants.

On June 9, 2011, District Judge Philip A. Brimmer entered an Order Accepting Magistrate Judge's Recommendation (Doc. No. 85 [hereinafter "June 9, 2011 Order"), which adopted this court's April 27, 2011 Recommendation (Doc. 74 [hereinafter "Apr. 27, 2011 Recommendation"]) and dismissed Plaintiff's claims against the former defendants.  As such, Plaintiff's only remaining claims assert that Defendants Ferguson; Meigs; Garcia, formerly John Doe 1; and Mulay, formerly John Doe 2, violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  Specifically, Plaintiff alleges that Defendant Ferguson violated his Eighth Amendment rights by using excessive force against him and that Defendants Garcia, Meigs, and Mulay violated his Eighth Amendment rights through their deliberate indifference to his serious medical needs.  (Am. Compl. at 8, 17.)

Judge Brimmer's June 9, 2011 Order also adopted this court's April 27, 2011 Recommendation to the extent that it recommended that Plaintiff's first Motion for Leave to File an Amended Complaint (Doc. No. 51) be granted in part and denied in part.  (*See* June 9, 2011 Order at 4.)  Judge Brimmer consequently directed Plaintiff to file a second amended complaint containing only the allegations exactly as they appeared in paragraphs one and four of Plaintiff's

first Motion for Leave to File an Amended Complaint. (*Id.*) On June 24, 2011, Plaintiff filed a second Motion for Leave to File Amended Complaint containing only the allegations of paragraphs one and four of his prior Motion for Leave to Amend the Complaint. (*Compare* Doc. No. 51 *with* Doc. No. 86.) As noted above, the court construed this second Motion for Leave to Amend the Complaint as a Supplement to Plaintiff's Amended Complaint. (*See* Minute Order, Doc. No. 88.)

On July 18, 2011, Plaintiff filed a third Motion for Leave to File an Amended Complaint seeking to substitute Defendants Garcia and Mulay for John Does 1 and 2, respectively. (Doc. No. 95 [Third Mot. Am.].) That Motion was granted on July 25, 2011, and the caption was amended to replace John Doe 1 with Defendant Garcia and John Doe 2 with Defendant Mulay. (Minute Order, Doc. No. 99.)

On July 22, 2011, Plaintiff filed a fourth Motion for Leave to File an Amended Complaint. (Doc. No. 107 [Fourth Mot. Am.].) Therein, Plaintiff stated that "[d]ue to discovery it was determined that Sgt. Meiggs [sic] is not a deffendant [sic] in this action and should be removed as such." (*Id.*) However, the court denied this Motion without prejudice because, among other things, Plaintiff (1) also sought to add two additional defendants, but failed to detail why they should be added to this suit; and (2) failed to attach a complete proposed amended complaint to his Motion. (*See* Minute Order, Doc. No. 109, filed Aug. 23, 2011.)

Defendants Motion for Summary Judgment was filed on January 20, 2012. (*See* Mot. Summ. J.) Pursuant to D.C.COlO.LCivR 7.1C and Fed. R. Civ. P. 6(d), Plaintiff had until February 13, 2012 to respond. However, no response was filed before, or any time after, that

date. In light of Plaintiff's failure to file a response, Defendants did not file a reply. Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARD

### A.   *Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### *B.    Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to

the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff first must establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id.* This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.* at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

## ANALYSIS

As is relevant to this Recommendation, Defendants argue they are entitled to summary judgment because (1) Plaintiff has failed to establish Eighth Amendment claims for excessive force and deliberate indifference against Defendants Ferguson and Meigs, respectively, and that, consequently, these defendants are entitled to qualified immunity; and (2) Plaintiff's claims

against Defendants Garcia and Mulay are barred by the applicable statute of limitations. The court addresses these arguments in turn below.

### A.     *Excessive Force Claim against Defendant Ferguson*

Defendants argue that Defendant Ferguson is entitled to qualified immunity from Plaintiff's excessive force claim because Plaintiff has not demonstrated that Defendant Ferguson intentionally or maliciously closed Plaintiff's cell door on his ankle and because anatomical evidence demonstrates that Plaintiff did not suffer any injury as a result of this incident. (Mot. Summ. J. at 9-13, 22-23.)  Because the court is persuaded by Defendants' former argument it does not address the latter.[2]

Excessive force claims in the prison setting are generally analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. *Smith v. Cochran,* 339 F.3d 1205, 1210 n.2 (10th Cir. 2003). The Eighth Amendment encompasses an inmate's "constitutional right to be secure in her [or his] bodily integrity and free from attack by prison guards." *Id.* at 1212 (internal quotation marks and citation omitted). To assert an Eighth Amendment claim, a plaintiff must satisfy a two-prong test: (1) that the deprivation suffered or

---

[2] Indeed, if Plaintiff was able to establish that Defendant Ferguson intentionally or maliciously closed Plaintiff's cell door on his ankle, the fact that Plaintiff did not suffer any serious injury would not necessarily prevent Plaintiff from satisfying the objective prong of the Eighth Amendment inquiry outlined *supra*. That is because a plaintiff "alleging excessive force need not present facts of significant injury if he also present facts showing that the official 'maliciously and sadistically use[d] force to cause harm.'" *Purkey v. Green,* 28 F. App'x 736, 744 (10th Cir. 2001) (quoting *Hudson v. McMillan,* 503 U.S. 1, 6 (1992)); *see also Wilkins v. Gaddy,* 130 S. Ct. 1175, 1178-79 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.")

the conduct challenged was "objectively 'sufficiently serious,'" and (2) that the defendant had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

Plaintiff's claim against Defendant Ferguson fails to satisfy the second prong. To satisfy this subjective component, a plaintiff must establish sufficient facts to show that a defendant acted with deliberate indifference to his safety or "maliciously and sadistically use[d] force to cause harm." *See Hudson,* 503 U.S. at 9-10; *Berry v. City of Muskogee,* 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir. 1997).

At the outset, the court finds that Defendant Fergerson had a legitimate penological purpose for his conduct. At the time of Plaintiff's purported injury, Defendant Ferguson was closing the doors to all of the cells at DCDF for lock down, which undoubtedly constitutes a legitimate penological purpose. (Mot. Summ. J., Ex. A, Aff. of Clifford Ferguson, ¶¶ 6-7 [Ferguson Aff.].) Thus, the court cannot infer that Defendant Ferguson acted with a culpable state of mind based solely on his conduct. *Boddie,* 105 F.3d at 861.

Otherwise, Plaintiff has not submitted any evidence suggesting that Defendant Ferguson acted with deliberate indifference, much less maliciously and sadistically. Although Plaintiff alleges that Defendant Ferguson should have know that he was caught in the doorway of his cell because he had a full view of Plaintiff though a large curved mirror and because Sargeant Jones attempted to warn him of Plaintiff's situation (Supp. Am. Compl. at 2), Plaintiff has failed to

10

submit any evidence demonstrating that Defendant Ferguson actually saw Plaintiff through that mirror or heard Sargeant Jones's warning before closing the cell doors. Indeed, to the contrary, Defendant Ferguson has submitted a sworn affidavit stating that at the time he closed the cell doors, he "believed that all offenders were inside their cells" and he never "observed that [Plaintiff's] wheelchair was stuck in his cell doorway." (Ferguson Aff. ¶¶ 8-9.) As such, Defendant Ferguson maintains that he "did not intentionally or purposefully close the cell door on [Plaintiff's] wheelchair"; instead he did so "solely by accident" and not "for the purpose of causing [Plaintiff] pain." (*Id.* ¶¶ 10–11.)

At best, the undisputed facts before the court suggest that Defendant Ferguson was negligent in closing Plaintiff's cell door on his ankle, which is insufficient to establish a claim for excessive force under the Eighth Amendment. *Berry,* 900 F.2d at 1495-96 (10th Cir. 1990). Therefore, the court finds that Plaintiff has failed to establish that Defendant Ferguson violated his Eighth Amendment rights, which, in turn, means that Defendant Ferguson is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. Accordingly, the court finds that Defendants' Motion for Summary Judgment is properly granted as to Plaintiff's excessive force claim against Defendant Ferguson.

### B.   *Deliberate Indifference Claim against Defendant Meigs*

Defendants argue that Defendant Meigs is entitled to qualified immunity from Plaintiff's deliberate indifference claim against him because Plaintiff has failed to demonstrate that

Defendant Meigs knew of Plaintiff's injury before refusing to provide Plaintiff with a wheelchair.[3] (Mot. Summ. J. at 19-20, 22-23.) The court agrees.

The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 103-04.

Similar to the standard applied to claims for excessive force discussed above, a claim for deliberate indifference has both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). To satisfy the subjective component, a

---

[3] Although Defendants lodge this argument in the alternative (*see* Mot. Summ. J. at 17) to their primary argument that Plaintiff failed to exhaust available administrative remedies with respect to his claims against Defendant Megis (*id.* at 15-16)*,* the court notes that a dismissal for failure to exhaust administrative remedies would only result in a dismissal without prejudice. *Snyder v. Harris,* 406 F. App'x 313, 317 (10th Cir. 2011). Summary judgment on the merits of Plaintiff's claim against Defendant Meigs, on the other hand, would result in a dismissal with prejudice.

prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.  The official must "know[] of and disregard[] an excessive risk to inmate health and safety." *Id.* at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

In his Amended Complaint, which has been sworn to under penalty of perjury, Plaintiff states that, after going into CTCF receiving to obtain a wheelchair for Plaintiff, Defendant Garcia returned and told Plaintiff that "[Defendant] Meiggs [sic] won't give you a wheelchair or any such help."  (Am. Compl. at 17); *see also Green v. Branson,* 108 F.3d 1296, 1301 n.1 (10th Cir. 1997) (where a complaint has been sworn to under penalty of perjury, the court may treat it as an affidavit for summary judgment purposes).  However, as outlined in the court's April 27, 2011 Recommendation, this fact alone falls short of demonstrating that "Defendant Meiggs [sic] was aware of a serious medical need of Plaintiff or a substantial risk of harm which he disregarded."  (Apr. 27, 2011 Recommendation at 25.)

The court suggested that Plaintiff could demonstrate a claim for deliberate indifference under the Eighth Amendment if he submitted proof of his allegations, featured in his Supplement to the Amended Complaint, that Defendant Garcia informed Defendant Meigs that "Plaintiff required a wheelchair because that was how he got to the bus at DRDC" and that, after Plaintiff crawled on his hands and knees to CTCF intake, Defendant Meigs told Plaintiff "that wasn't so bad now was it?" (Supp. Am. Compl. at 2-3). (*See id.* at 25-26.)  However, unlike his Amended Complaint, Plaintiff's Supplement to his Amended Complaint is not sworn under penalty of

13

perjury and therefore may not considered for summary judgment purposes. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970) (a nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence). Furthermore, the court notes that, in his fourth Motion for Leave to File an Amended Complaint, Plaintiff attempted to remove Defendant Meigs from this action because discovery ostensibly failed to support Plaintiff's allegations against Defendant Meigs. (*See* Fourth Mot. Am.) Moreover, contrary to Plaintiff's allegations, Defendant Meigs has submitted a sworn affidavit stating that he "do[es] not recall being told by [Plaintiff] or any transport officer [i.e. Defendant Garcia] that [Plaintiff] required the assistance of a wheelchair" and that Plaintiff was "never required to crawl on his hands and knees to the CTFC intake area." (Meigs Aff. ¶¶ 6, 9.)

Although the parties dispute whether Defendant Meigs refused to provide Plaintiff with a wheelchair, there is no evidence before the court suggesting that Defendant Meigs was aware of Plaintiff's medical needs or disregarded a substantial risk of harm to Plaintiff. Therefore, Plaintiff has failed to satisfy the subjective component of a deliberate indifference claim. *Farmer*, 511 U.S. at 837. Accordingly, because Plaintiff has failed to demonstrate a violation of his Eighth Amendment rights, the court finds that Defendant Meigs is entitled to qualified immunity, *Saucier*, 533 U.S. at 201, and that Defendants' Motion for Summary Judgment is properly granted as to Plaintiff's deliberate indifference claim against Defendant Meigs.

### C.  *Claims Against Defendants Garcia and Mulay*

Defendants argue that Plaintiff's claims against Defendants Garcia and Mulay are barred by the applicable statute of limitations. (Mot. Summ. J. at 13-15.) Defendants acknowledge that

Plaintiff filed his original Complaint prior to the expiration of the statute of limitations. (*Id.* at 14; *see also* Compl.) However, they maintain that Plaintiff's amendments replacing John Does 1 and 2 with Defendants Garcia and Mulay, respectively, were filed after the expiration of the statute of limitations and do not relate back under Federal Rule of Civil Procedure 15(c) to the date of Plaintiff's original Complaint. (Mot. Summ. J. at 14.)

"[L]imitations periods in § 1983 claims are to be determined by reference to the appropriate state statute of limitations." *Hardin v. Straub,* 490 U.S. 536, 539 (1989); *Baker v. Bd. of Regents,* 991 F.2d 628, 632-33 (10th Cir. 1993) ("The length of a statute of limitations period and related questions of tolling and application are governed by state law, unless the tolling rules are inconsistent with federal law or [policy]."). In Colorado, actions brought under § 1983 are governed by the two-year statute of limitations codified at Colo. Rev. Stat. § 13-80-102(g). *Riel v. Reed,* 760 F. Supp. 852, 854-55 (D. Colo. 1991) (citations omitted); Colo. Rev. Stat. § 13-80-102(g) ("The following civil actions . . . shall be commenced within two years after the cause of action accrues, and not thereafter: . . . all actions upon liability created by a federal statute where no period of limitations is provided in said federal statute.")

While state law governs the limitations period applicable to § 1983 claims, federal law specifies when a § 1983 claim accrues. *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987) (citations omitted); *Baker,* 991 F2d 628, 632 (10th Cir. 1993). "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir. 1998). The plaintiff "need not know the full extent of his injuries before

15

the statute of limitations begins to run." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (citations omitted). Additionally, "it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker*, 991 F.2d at 632.

Here, the incident giving rise to Plaintiff's claims against Defendants Garcia and Mulay occurred on November 21, 2008. (Am. Comp. at 17.) Because Defendants Garcia's and Mulay's alleged conduct and Plaintiff's alleged injury all occurred that same day, Plaintiff knew or should have known on November 21, 2008, that his constitutional rights were violated. However, Plaintiff's third Motion for Leave to file an Amended Complaint to substitute Defendants Garcia and Mulay for John Does 1 and 2, respectively, was not filed until July 18, 2011—well over two years after the November 21, 2008 incident. (*See* Third Mot. Am.) As such, Plaintiff's claims against Defendant Garcia and Mulay are time-barred unless Plaintiff's amendments to add Defendants Garcia and Mulay relate back to the filing of his original complaint.

The court finds that Plaintiff's July 18, 2011 amendments to add Defendants Garcia and Mulay do not relate back to the filing of his original Complaint. An amendment relates back to the filing of the original complaint when, *inter alia,*

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

16

>    (ii) knew or should have known that the action would have been
>    brought against it, but for a mistake concerning the proper party's
>    identity.

Fed. R. Civ. P. 15(c)(1)(C).

Here, even assuming Plaintiff could satisfy the other requirements for relation back, Plaintiff's proposed amendments fail under Rule 15(c)(1)(C)(ii).  The Tenth Circuit has plainly held that the substitution of named defendants for previously unknown John Doe defendants does not relate back under Rule 15(c) because a lack of knowledge of the intended defendant's identity is not "a mistake concerning the identity of the proper party." *Garrett v. Fleming,* 362 F.3d 692, 696-97 (10th Cir. 2004) ("A plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type Rule 15(c)[] was meant to address.").

Accordingly, because Plaintiff's amendments to substitute Defendants Garcia and Mulay were filed after the expiration of the statute of limitations and because these amendments do not relate back to the filing of Plaintiff's original Complaint under Rule 15(c), the court finds that Plaintiff's claims against Defendants Garcia and Mulay are time-barred.  Therefore, Defendants' Motion for Summary Judgment is properly granted as to Plaintiff's claims against Defendants Garcia and Mulay.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' Motion for Summary Judgment (Doc. No. 123) be GRANTED and that summary judgment be entered in favor of Defendants on all of Plaintiff's remaining claims.

The court further

RECOMMENDS that the District Court certify, pursuant to Title 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation and order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 14th day of August, 2012.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge